In re Anthony Litchford
JONES Debtor.

The Estate of Lola Brewer,
et al., Plaintiffs,

v.

Anthony Litchford Jones, Defendant.

Bankruptcy No. 06–12249.
Adversary No. 06–01821.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 25, 2007.

Robert D. Barr, Dettelbach, Sicherman & Baumgart, Cleveland, OH, for Plaintiffs.

Mark H. Knevel, Michael D. Attali, Knevel & Associates Co LPA, Cleveland, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLF BAXTER, Chief Judge.

Before this Court are cross motions for summary judgment with respect to the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6) filed by The Estate of Lola Brewer and Mary C. Barron ("Plaintiffs") against Anthony Litchford Jones (the "Defendant" or the "Debtor"), and by the Debtor. This Court has core matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(I), 28 U.S.C. § 1334 and General Order No. 84 of the District.

A hearing was held upon due notice to all entitled parties. After considering all of the evidence and the record, generally, the following findings of fact and conclusions of law are hereby rendered. The dispositive facts are, generally, undisputed.

*

The Plaintiffs were introduced to the Debtor–Defendant, Anthony Litchford Jones, through Mrs. Brewer's granddaughter, Lola Barron (Mrs. Barron's daughter). Lola Barron worked as a flight attendant with the Debtor–Defendant's wife, Karen Dowell. The Debtor–Defendant represented to the Plaintiffs that he was a financial planner. Prior to the commencement of the present case, the Debtor–Defendant operated an unincorporated business known as Dowell & Jones. The Defendant and his wife, Karen Dowell, were the sole owners and operators of the business. In September 1998, the Defendant helped Mrs. Brewer open an account at Fidelity Investments ("Fidelity"). The account was opened with 16,632 shares of Alltel stock which Mrs. Brewer had inherited from her late husband in 1997. The Alltel stock was valued at $760,914.00 when the account opened.

The Defendant signed the paperwork to open the Fidelity account as an authorized user of the account and directed all correspondence from Fidelity to be sent to his business address. The Defendant also held his own investment accounts with Fidelity. Shortly after opening Mrs. Brewer's investment account, the Defendant transferred approximately $555,000.00 from Mrs. Brewer's account to his own investment accounts at Fidelity. Subsequently, the Defendant made additional transfers from Mrs. Brewer's account to his own account totaling approximately $240,000.00. With the additional transfers, Mrs. Brewer's account was emptied of the majority of its assets.

By 1999, Mrs. Brewer's family grew suspicious of the Defendant because they were not receiving regular monthly statements to keep them apprised of the status of the Fidelity account. Mrs. Brewer's family contacted the Defendant repeatedly for information about the Fidelity account but he did not respond to their requests. Finally, in December 1999, the family retained an attorney, Laurence A. Turbow, who prepared a letter to the Defendant dated December 17, 1999 requesting that the Defendant cease all activity relating to the Fidelity accounts and that he provide an accounting immediately. Because the Defendant did not comply with this request, the Plaintiffs filed a lawsuit against the Defendant and other parties in the Court of Common Pleas of Cuyahoga County, Ohio, captioned *Estate of Lola Brewer, et al, v. Dowell & Jones, et al.,* Case No. 402097 (the "state court action") on February 17, 2000. While the state court action was pending, Mrs. Brewer died on November 20, 2000. Her probate estate was substituted as a party plaintiff.

On March 11, 2003, after over three years of case activity and extensive discovery in the state court action, the parties

entered into an Agreed Judgment (the "state court judgment"). Under the terms of the state court judgment, the Defendant agreed to return all remaining funds and securities held in the Fidelity accounts to the Plaintiffs, to repay the Plaintiffs $400,000.00 and to have a judgment entered against him in that dollar amount. To date, no amount of the $400,000.00 State Court Judgment has been repaid to the Plaintiffs. Although the judge in the state court action signed the state court judgment, no findings of fact or conclusions of law were rendered.

No appeal, motion to clarify judgment, or any other motion has been filed in the state court action since the state court judgment was entered. The Debtor–Defendant has, however, filed three bankruptcy petitions. The first bankruptcy case filing occurred on November 12, 2004. The Debtor filed a chapter 13 case, designated as Case No. 04–24507. Shortly thereafter, on January 7, 2005, this Court dismissed the Debtor's case for want of prosecution. The second bankruptcy case filing occurred on June 11, 2005. The Debtor and his wife jointly commenced a voluntary chapter 11 case, designated as Case No. 05–18384. On April 11, 2006, this Court dismissed the Debtor's second case for want of prosecution. The Debtor commenced his third and present case, a voluntary chapter 7 case, designated as Case No. 06–12249 on June 4, 2006.

On July 11, 2006, the meeting of creditors was held in the Debtor's present Chapter 7 case pursuant to 11 U.S.C. § 341. Therein, the Debtor was represented by counsel and testified that he owned his home, valued at $190,000.00 based on the county auditor estimate, with a mortgage balance of approximately $87,000.00. *See,* Plaintiffs' Motion for Summary Judgment, Exhibit F, p. 8. The debtor also acknowledged the existence of a judgment lien against his home that runs to the Estate of Lola Brewer in the amount of $400,000.00 *(Id.)* and that he breached his fiduciary duty to Mrs. Brewer. *Id.* at 23.

On September 5, 2006, the Plaintiffs commenced this adversary proceeding by filing a complaint to determine dischargeability of the Defendant's debt to the Plaintiffs pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6). The Plaintiffs amended their complaint on November 20, 2006 to include an additional allegation against the Defendant of false representation and to specify that the actions taken by the Defendant with respect to Mrs. Brewer's Fidelity account were committed without her consent. The Defendant timely answered the complaint.

Subsequently, the parties filed cross motions for summary judgment. On April 16, 2007, this Court ordered the parties to file responsive pleadings within ten (10) days after service of the motion or certify to the Court that there is no opposition to the granting of the motion within that same ten (10) day period. The Plaintiffs filed a brief opposing Defendant's motion for summary judgment on April 19, 2007. The Defendant did not file a brief opposing Plaintiffs motion for summary judgment within ten (10) days of service. However, on May 3, 2007, two days after oral arguments and a hearing on this matter, the Defendant filed a certification of no opposition stating that no brief opposing Plaintiffs' motion for summary judgment would be filed.

\* \*

The Plaintiffs object to the dischargeability of Debtors' debt with regard to the $400,000.00 state court judgment which arose from a lawsuit involving claims for fraud, breach of fiduciary duty, false representations, embezzlement, and larceny. Plaintiffs' contend that, before Mrs. Brew-

er's death, her family and her attorneys met with her and she told them unequivocally that she never authorized or intended to authorize the transfer of assets to the Defendant or to his business. *Affidavit of Mary C. Barron,* page 3, at paragraph 19; *Affidavit of Leigh A. Hollingsworth,* page 2, at paragraph 7; *Affidavit of Laurence A. Turbow,* page 2, at paragraph 11. It is undisputed that the parties agreed to the state court judgment as settlement of the state court action and the state court judgment is secured by a lien on the Debtor's home. The Plaintiffs further assert that there are no genuine issues as to any material fact in this case. The Plaintiffs argue that pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6) discharge of the Debtors' state court judgment debt should not be granted because it is a debt that arose from fraud, defalcation, embezzlement and larceny that caused the Plaintiffs a willful and malicious injury, in the form of conversion of a lifetime of savings.

The Debtor–Defendant contends that the $400,000.00 state court judgment is dischargeable and states that the Plaintiffs are barred from litigating the dischargeability of this debt by *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). The Debtor argues that the state court judgment constituted a global resolution of the dispute between the Plaintiffs and the Debtor and was a full, final and complete release. The Debtor then asserts that there are no genuine issues as to any material fact in this case and states that summary judgment should be granted to him because the Plaintiffs are barred by law from opposing the dischargeability of the state court judgment debt.

The Plaintiffs oppose the relief sought by the Debtor–Defendant and contend that they are not barred from objecting to the dischargeability of the $400,000.00 state court judgment. The Plaintiffs further state that the Debtor–Defendant's motion for summary judgment is contrary to law and therefore should be denied.

\* \* \*

The dispositive issue before this Court is whether there exists genuine issues of material fact in dispute regarding the dischargeability of the subject debt.

\* \* \* \*

Federal Rule of Civil Procedure 56 provides for summary judgment and states that summary judgment shall be rendered to a party on a showing that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056. Fed. R. Bankr.P. 7056.

Summary judgment is appropriate where there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to establish the existence of a material fact. *Id.*

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538. The non-movant's bare assertions, standing alone, are insufficient to create a material issue

of fact and defeat a motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 1348. Further, a "mere scintilla of evidence in support of the non-moving party will not be sufficient." *Nye v. CSX Transportation,* 437 F.3d 556, 563 (6th Cir.2006).

11 U.S.C. § 523 identifies certain types of debt that are exceptions to discharge. At issue in this proceeding are subsections (a)(2)(A), (4) and (6), which state the following.

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

\* \* \* \* \*

■ Pursuant to Federal Rule of Bankruptcy Procedure 4005, in a trial on a complaint objecting to a discharge, the plaintiff has the burden of proving that a discharge is unwarranted. The party seeking to have a debt declared nondischargeable bears the burden of proving by a preponderance of the evidence that the debt falls within one of the statutory exceptions. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755(1991).

Federal Rule of Bankruptcy Procedure 4007 identifies the procedural requirements for determination of dischargeability of a debt. There are three exceptions to discharge pursuant to § 523 that require a creditor to file a complaint to determine dischargeability—subsections (a)(2), (4), and (6). *In re Everly,* 346 B.R. 791, 796 (8th Cir. BAP 2006). Such a creditor must file a complaint under Fed R. Bankr.P. 4007(c) to determine dischargeability no later than sixty (60) days after the first date set for the meeting of creditors. Fed. R. Bankr.P. 4007(c); *Id.* A failure to timely file such a complaint will result in the discharge of those debts. *Id.* In the present case, Plaintiffs timely filed their complaint to determine dischargeability on September 5, 2006, within sixty (60) days of the first date set for the meeting of creditors on July 11, 2006.

Section 523(a)(2)(A) provides, in pertinent part, that a discharge in bankruptcy does not discharge an individual from any debt to the extent that such debt is obtained by "false pretenses, a false representation, or actual fraud...." *Grogan v. Garner,* 498 U.S. at 281, 111 S.Ct. 654. The Plaintiffs reserved their claim under § 523(a)(2)(A) in the event of a trial and stated that they "believe it will be unnecessary to address that claim for purposes of [the summary judgment] motion". Thus, Plaintiffs' motion for summary judgment is focused on §§ 523(a)(4) and (a)(6).

■ Section 523(a)(4) provides, in pertinent part, that a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from discharge. To prevail under the fraud or defalcation provision, the Plaintiffs must prove: 1) the existence of an express trust status to the property at issue; 2) the Defendant was acting in a fiduciary capacity; and 3) the alleged debt arose from the Defendant's fraud or defalcation while acting in a fiduciary capacity. *Capitol Indent. Corp. v. Interstate Agency, Inc. (In re Interstate Agency),* 760 F.2d 121, 124 (6th Cir.1985). The *Interstate*

*Agency* court defined defalcation as "encompassing embezzlement, the 'misappropriation of trust funds held in any fiduciary capacity,' and the 'failure to properly account for such funds.'" *Id.* at 125. Black's Law Dictionary defines defalcation as "embezzlement" and "Loosely, the failure to meet an obligation; a non-fraudulent default." *Black's Law Dictionary* 448 (8th ed.2004).

 Under Ohio law, an express trust is "a fiduciary relationship with respect to property, arising as a result of a manifestation with intention to create it and subjecting the person in whom the title is vested to equitable duties to deal with it for the benefit of others." *Gabel v. Richley,* 101 Ohio App.3d 356, 362–63, 655 N.E.2d 773 (1995). (internal quotations omitted). In order to establish the existence of an express or technical trust under Ohio law, therefore, a Plaintiff must show: "1) an intent to create a trust; 2) a trustee; 3) a trust res; and 4) a definite beneficiary." *In re Blaszak,* 397 F.3d 386, 391 (6th Cir.2005). An express trust can be inferred from the circumstances of the case:

> To constitute an express trust, there must either be explicit language to that effect or circumstances which show with reasonable certainty that a trust was intended to be created. No particular form of words, however, is required to create a trust, and whether one exists is to be ascertained from the intention of the parties as manifested by the words and the circumstances of the particular case. If it appears to be the intention of the donor, from the whole instrument creating it, or by his expressions and conduct at the time, that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to the conveyance the character of a trust; and in determining

> whether or not a trust has been created there must be taken into consideration the situation and relation of the parties and the character of the property and the purposes which the settlor had in view in making the declaration.

*Jones v. Luplow,* 13 Ohio App. 428, 431–32 (1920).

In the present case, the Debtor–Defendant represented to the Plaintiffs that he was a financial planner and, based on that representation, the Plaintiffs entered into an investment agreement, entitled Platinum Performance Account, Ms. Lola Brewer, Registered Account Holder, # 020–BWR (the "Investment Agreement"). *Affidavit of Mary C. Barron,* page 2, at paragraph 12. The executed Investment Agreement demonstrated the requisite intent to create a trust, identified Defendant as the trustee, with Mrs. Brewer's initial investment constituting the trust res, and stated that the investment would be for Mrs. Brewer's benefit. The terms of the Investment Agreement thereby created an express trust, wherein the Defendant held a fiduciary duty to Mrs. Brewer and the maintenance of her investment.

 Plaintiffs' affidavits, with reference to the Fidelity account statements, reveal that Mrs. Brewer did not authorize the Defendant to make such large withdrawals of funds from her Fidelity account for his personal benefit or the benefit of his business. *Affidavit of Mary C. Barron,* page 3–5, at paragraphs 17, 21, 24, 25, and 32. The Court finds Plaintiffs' averments to be credible and supported by appropriate documentation. *See,* Deposition of Anthony Litchford Jones, Exhibits 1, 4, 5, 7, 20, 33, and 53. Mrs. Brewer only intended for the Defendant to invest for her benefit and agreed to pay fees that did not amount to liquidating her entire investment account. *Id.; Affidavit of Mary C. Barron, supra,*

at 3–5. Moreover, the Defendant testified at the meeting of creditors that he breached his fiduciary duty to Mrs. Brewer, and that in settlement of the state court action, he agreed to repay her $400,000.00. *See,* Plaintiffs' Motion for Summary Judgment, Exhibit F, pp. 22–23. By transferring funds from Mrs. Brewer's Fidelity account, for his personal benefit, while acting in a fiduciary capacity, the Defendant committed defalcation. The Plaintiffs, accordingly, have presented a *prima facie* case pursuant to 11 U.S.C. § 523(a)(4) that the debt owed to Plaintiffs is nondischargeable.

 The Plaintiffs also argued that the debt arising from the state court judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Section 523(a)(6) of the Bankruptcy Code provides that a debt for "willful and malicious injury by the debtor to another" is not dischargeable. *Kawaauhau v. Geiger,* 523 U.S. 57, 59, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A debtor's conduct is "willful" for purposes of § 523(a)(6) when the debtor intended his conduct and the resulting consequences of that conduct. *Id.* Black's Law Dictionary defines willful and malicious injury as "damage to another entity (such as a creditor) caused by a debtor intentionally performing a wrongful act—without just cause or excuse—that the debtor knew was certain or substantially certain to cause injury." Black's Law Dictionary 802 (8th ed.2004).

Herein, the Debtor caused willful and malicious injury to Plaintiffs by depleting a lifetime of savings from Mrs. Brewer. The Debtor knew that transferring such large amounts of funds out of Mrs. Brewer's account and into his own personal account would cause injury to her yet he did it in conscious disregard of his fiduciary duties and without just cause or excuse. Accordingly, the Plaintiffs have presented

a *prima facie* case pursuant to 11 U.S.C. § 523(a)(6) that the debt owed to Plaintiffs is nondischargeable.

 The Defendant challenged whether the Plaintiffs are barred by the doctrines of issue preclusion and claim preclusion from pursuing their dischargeability claim arising from the state court judgment that was entered with no factual findings. Defendant's challenge is not supported by law. Congress has granted exclusive jurisdiction over dischargeability issues to the bankruptcy courts. *Brown v. Felsen,* 442 U.S. 127, 135–36, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Spilman v. Harley,* 656 F.2d 224, 226 (6th Cir.1981). Claim preclusion, also referred to as *res judicata,* does not prevent the bankruptcy court from reviewing the record in a prior state court proceeding to determine the dischargeability of a debt. *Brown v. Felsen,* 442 U.S. at 138–39, 99 S.Ct. 2205. However, issue preclusion, also referred to as collateral estoppel, may prevent the same parties from re-litigation of facts and issues in a subsequent suit that were already litigated and decided by a state court. *Grogan v. Garner,* 498 U.S. at 284–85, 111 S.Ct. 654. In this matter, it is undisputed that no trial took place in the state court case, as the state court case was settled, by agreement of the parties, in the state court judgment with no factual findings. For this reason, this Court finds adjudication of dischargeability herein proper as no factual findings or legal conclusions were rendered by the state court. Collateral estoppel does not apply to the facts or circumstances of this case.

The facts of this case are remarkably similar to the circumstances outlined by the Supreme Court's ruling in *Archer v. Warner,* 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003). The Supreme Court summarized the facts in the *Archer* case as follows:

(1) A sues B seeking money that (A says) B obtained through fraud; (2) the parties settle the lawsuit and release related claims; (3) the settlement agreement does not resolve the issue of fraud, but provides that B will pay A a fixed sum; (4) B does not pay the fixed sum; (5) B enters bankruptcy; and (6) A claims that B's obligation to pay the fixed settlement sum is nondischargeable because, like the original debt, it is for "money . . . obtained by . . . fraud." *Id.* at 316–17, 123 S.Ct. 1462. The Supreme Court went on to say that it did not consider the difference between a settlement as opposed to a stipulation and consent judgment to be determinative of the application of the dischargeability provisions under § 523. *Id.* at 321, 123 S.Ct. 1462. "A debt embodied in the settlement of a fraud case 'arises' no less 'out of the underlying fraud' than a debt embodied in a stipulation and consent decree." *Id.*

In the present case, the Plaintiffs sued Debtor for the return of money that they alleged the Debtor obtained through fraud, defalcation, false representation, embezzlement and larceny that caused the Plaintiffs a willful and malicious injury. The parties agreed to settle the lawsuit and released related claims in the state court judgment. The state court judgment did not make any findings of fact or conclusions of law, however, it was adjudged that the Debtor would pay a fixed sum of $400,000.00. The Debtor did not pay the fixed sum. Instead, the Debtor sought voluntary bankruptcy relief, and the Plaintiffs now assert that the Debtor's obligation to pay the fixed settlement sum is nondischargeable because, like the original debt, it arose from conduct that would render the debt nondischargeable.

The Debtor filed no brief in opposition to the Plaintiffs' motion for summary judgment and submitted an untimely certification of no opposition two days after oral arguments were heard. At oral argument, when this Court inquired of Debtor's counsel about the lack of a filed brief in opposition to Plaintiffs' motion for summary judgment, he replied, "[A]s is often the case in bankruptcy litigation, . . . debtors come in without the ability to fully litigate the matters in their case . . . by way of . . . the costs involved. In the instant case, my client and I, we have not filed an opposition to [Plaintiffs'] motion for summary judgment." The Debtor's counsel offers no other explanation or reasonable justification for why this Court should deny Plaintiffs' motion for summary judgment with respect to the dischargeability of the $400,000.00 state court judgment. Upon the aforementioned findings, there exists no genuine issue of material fact in dispute herein.

\* \* \* \* \* \*

Accordingly, the Plaintiffs' motion for summary judgment to have the state court judgment debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) is well-premised and unopposed. The subject debt owed to the Plaintiffs by the Debtor in the amount of $400,000.00 is hereby found to be nondischargeable. Based on the findings with regard to Plaintiffs' motion for summary judgment, the Debtor's motion for summary judgment is not well-premised and is hereby denied. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

### *JUDGMENT*

At Cleveland, in said District, on this *25th* day of May, 2007.

A Memorandum of Opinion and Order having been rendered by the Court in this matter,

IT IS THEREFORE ORDERED, AD-JUDGED AND DECREED that the relief sought by the Plaintiffs is hereby granted. The Plaintiffs' motion for summary judgment to have the state court judgment debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) is well-premised and unopposed. The subject debt owed to the Plaintiffs by the Debtor in the amount of $400,000.00 is hereby found to be nondischargeable. Based on the findings with regard to Plaintiffs' motion for summary judgment, the Debtor's motion for summary judgment is not well-premised and is hereby denied. Each party is to bear its respective costs.

**IT IS SO ORDERED.**