IN RE HEATH H. HAMPTON, formerly doing business as Hampton Consulting Corp., formerly doing business as Pathways Outfitting and Ranching, formerly doing business as Center Vision Insurance Agency, Inc., formerly doing business as Advisor Financing Inc., formerly doing business as Gateway Financial Services, formerly doing business as Pathway Advisors Inc., Chapter 7, Debtor.
CRAIG A. BUCL, YVONNE J. BUCL, BOBBY J. McCARLEY, SANDRA E. McCARLEY, WILLIAM S. BOWERS, TAMMY LYNN BOWERS, DOYLE G. BOYD, HELEN L. BOYD, DARRELL WILLSON, and CAROLYN WILLSON, Plaintiffs-Appellants,
v.
HEATH H. HAMPTON, Defendant-Appellee.
BAP No. KS-08-067, Bankr. No. 07-40605, Adv. No. 07-07083.
United States Bankruptcy Appellate Panel, Tenth Circuit.
March 11, 2009.
Before MICHAEL, BROWN, and STARZYNSKI[1], Bankruptcy Judges.

OPINION[*]
BROWN, Bankruptcy Judge.
The plaintiffs-appellants are creditors (the "Creditors") who lost their investment in a livestock venture managed by the Debtor. They brought a nondischargeability action against the Debtor, asserting claims under §§ 523(a)(2), (a)(4) and (a)(6). Following a trial on the merits, the bankruptcy court held that the Creditors had failed to sustain their burden of proof on all claims and concluded that the debts were dischargeable. In this appeal, Creditors assert that the bankruptcy court erred by: (1) failing to find that Debtor acted with fraudulent intent; (2) failing to find that Debtor owed a fiduciary duty to Creditors and that he breached that duty; and (3) failing to find that Debtor's actions were willful and malicious. For the following reasons, we AFFIRM.

I. Standard of Review
We review the factual findings of the bankruptcy court for clear error and its legal findings de novo.[2] The determination of the existence of a fiduciary duty under § 523(a)(4)[3] is a legal conclusion, reviewed on a de novo basis.[4] A bankruptcy court's findings concerning fraudulent intent, justifiable reliance, and whether a debtor's actions are willful and malicious are factual and subject to review under a clearly erroneous standard.[5] A factual finding is "clearly erroneous" when "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made."[6]

II. Background
Acting through seven different business entities, the Debtor formed a business venture that raised livestock, mostly goats and sheep, on 13 different tracts of pasture land in Kansas. In 2005, the Debtor began selling "investments" in this livestock venture. Over a 13-month period, the Creditors invested an aggregate amount of approximately $671,000.[7] Their funds and others (including $400,000 of the Debtor's own funds) were used to purchase a large number of animals, as well as real estate, and to make improvements on the real estate. Debtor testified that the venture grew to be the fourth largest operating ranch in Kansas, with 42 miles of fenced pasture, 19 employees and nine active partners.
The exact legal structure of the venture was not clear from the evidence, although many documents admitted at trial stated that investors would become "partners" as a result of their investments. Under their agreement, the investors purchased a certain number of goats or sheep for a prescribed cost and, in exchange, they were to receive a specified percentage of the profits, net of expenses. The Creditors considered the Debtor to be the "managing partner" of the venture. It appears that the Debtor never completed paperwork to formally create a partnership. There was no evidence that the Debtor had any relationship with any of the Creditors prior to their investment.
Debtor sent a few profit checks to some of the Creditors early on, but these distributions soon ended. None of the Creditors received the return they were expecting from their investments. Some Creditors testified that the Debtor suggested they could make a 20-30% return and might also realize tax benefits. Without the promised returns, and without any accounting information from the Debtor, the Creditors met in mid-2006 and decided to fire the Debtor as the managing partner. One of the Creditors then picked up the venture's books and records from the Debtor, who voluntarily relinquished them and did not keep a copy for himself.
Exactly what happened to the venture and its property after the Creditors fired the Debtor is unclear from the record, but it appears that it collapsed shortly thereafter. Debtor testified that, at the time he was fired, he believed there was equity available in the venture's property, but the Creditors did not hire a replacement manager. Some of the livestock may have died and some Creditors may have engaged in "self-help" by seizing livestock. Although the Debtor also lost his investment of $400,000, the Creditors sued him personally, as well as the related business entities, in November 2006. The state court case was stayed in May of 2007, when Debtor filed bankruptcy.
The Creditors then filed a nondischargeability action against the Debtor. The gravamen of their complaint was that the Debtor never accounted for the use of the venture's funds. But they have also alleged that he failed to advise them of the risks associated with their investments. Instead, he "stayed positive" about the venture and indicated that he expected generous returns because of a strong market for sheep and goats. In their appellate briefs, the Creditors claim that the Debtor held himself out as a "qualified investment advisor" and "touted his expertise in the field of investing." It appears that the Debtor had worked in the "investment business" for twelve years prior to leaving that business for full-time ranching. Debtor holds an associate degree, and has taken two years of courses in the area of finance. The bankruptcy court made no findings that the Debtor acted as an investment advisor for the Creditors or that he made these representations to them as to his expertise.[8]
The bankruptcy court's order denied all of Creditors' claims. As to § 523(a)(2), the court found Creditors failed to prove that Debtor made any fraudulent misrepresentations or omissions, failed to show Debtor acted with an intent to deceive, and failed to show the Creditors justifiably relied on Debtor's representations. On the § 523(a)(4) claim, the bankruptcy court found Creditors had failed to establish that Debtor owed a fiduciary duty to them and, even assuming such a duty existed, failed to prove that the debt in question arose as a result of fraud or defalcation. On the § 523(a)(6) claim, the court found that Creditors wholly failed to show that Debtor committed a willful act or caused a malicious injury.

III. Discussion

A. § 523(a)(2)(A)
On appeal, the Creditors take issue with the bankruptcy court's conclusion that they failed to prove Debtor's fraudulent intent. The Creditors argue that the totality of the circumstances establish fraud because Debtor secured funds from the Creditors, provided nothing in return, and gave no explanation for the losses. These circumstances alone, the Creditors argue, give rise to a "strong presumption of intent to deceive." The Creditors point to no specific evidence that the bankruptcy court ignored. Instead, the Creditors seem to complain that they could not present more evidence because Debtor provided them with no information on their investments.
The bankruptcy court's reasoning and factual findings are careful and thorough. The court noted that the only evidence of actual reliance on "fraudulent misrepresentations" that Creditors presented at trial were Debtor's statements that Creditors could expect a 20-30% return, as well as his general statements that the venture "looked good," and the livestock market was "strong." The bankruptcy court concluded that these statements were not actionable because they were not representations of existing fact but rather expressions of opinion, expectation or "puffery."
Further, the court found a complete lack of evidence that Debtor's statements were false at the time they were made. The Creditors offered no evidence of what a reasonable rate of return would have been, leaving the court without any frame of reference to determine if Debtor had overestimated the potential rate of return. It found that the Creditors failed to present any evidence that Debtor knew his statements were false at the time he made them. The court stated that the mere fact that Debtor failed to fulfill contractual obligations, without more, is insufficient to support a claim of fraud. The Creditors further argued that Debtor had failed to advise them of the risks associated with the venture and that his failure constituted a fraudulent omission. The court found it had received no evidence as to the type of risk ordinarily associated with a livestock venture. Moreover, the Creditors had presented no evidence indicating that Debtor was aware of the risks associated with a livestock business when he accepted the Creditors' investments.
The bankruptcy court acknowledged that intent may be inferred from the totality of the circumstances, but concluded that the circumstances, at best, demonstrated negligence by Debtor. The court found the Debtor's testimony that he had no intent to deceive to be credible. The court also believed Debtor's testimony that he intended to honor his agreements but was prevented from doing so when he was fired by the Creditors. It was undisputed that Debtor turned over all of the venture's records to the Creditors, but the Creditors failed to produce any of the records at trial. The bankruptcy court also found that there was no evidence that Debtor had used the Creditors' funds for his personal benefit. Instead, the Debtor's testimony was uncontroverted that he put all the money he received from the Creditors into the venture.
The bankruptcy's court's factual conclusions on lack of fraudulent intent are supported by the record. Even if the court's conclusions were not so supported, the court also denied the Creditors' § 523(a)(2)(A) claim on an alternate basis  failure to prove justifiable reliance. The bankruptcy court noted that the Creditors failed to present any evidence of their respective businesses, or their education or investment backgrounds, without which the Court could not determine whether their reliance was justified. The Creditors make no argument on appeal that this finding was in error and, therefore, it serves as an alternate ground for affirming the dismissal of the § 523(a)(2)(A) claim.

B. § 523(a)(4)
The Creditors next argue that the bankruptcy court erred when it concluded that Debtor did not owe a fiduciary duty to them. The Creditors argue that, under Kansas law, a fiduciary duty is created where one of the parties "places special trust and confidence in the other" and there is a "certain inequality, dependence, weakness of age, mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one an advantage over the other."[9] Because the Debtor "held himself out as a qualified investment advisor" and "touted his expertise in the field of investing," the Creditors argue that he owed them a fiduciary duty.
At the outset, we note that the bankruptcy court did not find that Debtor acted or held himself out as an investment advisor. It found that the Creditors provided no evidence to support such a finding. Even assuming Debtor had held himself out with this expertise, the Tenth Circuit has held that there must be evidence of an express or technical trust in order to establish a fiduciary duty for purposes of § 523(a)(4).[10] It has ruled that, "[n]either a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability."[11] In addition, this limited type of fiduciary relationship must exist prior to the creation of the debt in controversy.[12] The Creditors made no effort below, nor in their appellate brief, to identify an express or technical trust or to show that a fiduciary relationship existed prior to their investments in the venture. Without such evidence, the bankruptcy court correctly determined that no fiduciary duty existed.
The bankruptcy court also correctly noted that a state statute may impose a trust as a matter of law. But the Creditors failed below and in their appellate brief to identify any Kansas state statute that would establish a statutory trust. To the extent the Creditors are arguing that Debtor had a duty as a "managing partner" or joint venturer, those arguments fail. This Court has previously held that the partners in a common law partnership or joint venture are not fiduciaries within the meaning of this nondischargeability statute.[13]
Some courts have held that an investment advisor may be considered a fiduciary for purposes of § 523(a)(4).[14] These cases are very fact specific and generally involve a debtor that had clear management and control over a creditor's monies.[15] In this case, the Creditors may regard the Debtor as having had control over their funds, but in fact they made an investment in a venture. The Debtor managed the venture, not their investment accounts. Where there is no evidence a debtor was entrusted with control of the creditor's investment funds or that he accepted funds in a trustee capacity, most courts have found no fiduciary duty exists.[16] Moreover, the Creditors have provided no Tenth Circuit precedent to support this application of the statute. Accordingly, we conclude the bankruptcy court was correct in holding no fiduciary duty existed.

C. § 523(a)(6)
The Creditor's arguments under § 523(a)(6) are similar to those they make under § 523(a)(2). They assert that the Debtor's actions demonstrate an "investment scheme." Despite the fact that there was no evidence that the Debtor misused the funds, they argue that "there is no evidence that the funds were spent appropriately." In other words, they seek to assert a claim under § 523(a)(6) based on the fact that they have not received a detailed accounting from the Debtor for the venture's use of funds. This argument, however, does not satisfy the requirements of § 523(a)(6), which the bankruptcy court correctly described as requiring proof of two elementsthat the injury is both willful and malicious.[17] A "willful act" is one in which the debtor must "desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it."[18] A malicious injury occurs when there is proof that the debtor either intended the resulting injury or intentionally took action that was substantially certain to cause the injury.[19] The test for this element is a subjective one: the court must determine what the debtor knew or intended with respect to the consequences of his actions.[20]
In this case, the bankruptcy court found that Creditors wholly failed to present evidence that Debtor committed a willful act or caused a malicious injury. The Creditors argue this was erroneous, but make no effort to pinpoint evidence that demonstrates Debtor's intent or knowledge. Instead, in their briefs and during oral argument, they maintain that the loss of their investments without satisfactory explanation is enough to demonstrate a "scheme" perpetrated by Debtor. There is some case law finding that debts arising out of an investment scheme or Ponzi scheme are nondischargeable under § 523(a)(6). However, these cases generally involve evidence of intentional theft or conversion of assets for personal use by the debtor.[21] There is no evidence of such an intentional act by the Debtor in this case, nor that he used the funds for personal use.
Section 727(a)(5) of the Bankruptcy Code denies a debtor a discharge whenever the "debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Under this statute, the objecting party has the initial burden of proving facts establishing that a loss or shrinkage of assets actually occurred.[22] Once the objecting party meets its initial burden, the burden then shifts to the debtor to explain the loss or deficiency of assets in a satisfactory manner.[23] But under § 523(a)(6), the creditor has the burden of proving the elements of a "willful act" and "malicious injury." Since the Creditors failed to meet this burden, the bankruptcy court did not err in dismissing their § 523(a)(6) claim.

D. The Purpose of the Dischargeability Trial
This appears to be a case in which counsel for the Creditors did not fully understand the import of their dischargeability proceeding in bankruptcy court. As noted by the bankruptcy court:
Plaintiff's counsel seemed to be under the impression that this proceeding was nothing more than a necessary first step to allowing him to conduct a more complete presentation of evidence in state court, where Plaintiffs have a pending action against Debtor and others. Counsel treated this action as if it was a motion for relief from stay, which would enable him to more fully produce evidence in state court, if Plaintiffs prevailed on their request to be allowed to return to state court, rather than a Complaint to Determine the Dischargeability of debts for which Plaintiffs had to meet their burden of proof before this Court.[24]
Counsel's misconception continues at the appellate level. In the Creditor's appellate brief, counsel stated that "[t]he purpose of the adversary proceeding was to allow the [state] case to move forward with all the relevant parties participating."[25] He also argues the bankruptcy court has not equitably assessed liability because "most of the parties were outside the bankruptcy court's jurisdiction" and, therefore, "[t]he only way justice can be served is for the stay to be lifted against Appellant in this matter, and allow the [state] case to proceed where all parties may be heard."[26]
These arguments may have had some relevance if the Creditors had moved for relief from stay to continue their state court action.[27] Instead they chose to proceed to trial in the adversary proceeding. They cannot now escape their burden of proof. As noted by the bankruptcy court, "this was [their] day in court."[28]

IV. Conclusion
For the foregoing reasons, there is no reversible error in the bankruptcy court's findings or conclusions. Accordingly, we AFFIRM.
NOTES
[1] Honorable James S. Starzynski, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Mexico, sitting by designation.
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[2] Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1370 (10th Cir. 1996).
[3] Unless otherwise specified, all references to "Sections" are to Title 11, United States Code.
[4] In re Young, 91 F.3d at 1373.
[5] Holaday v. Seay (In re Seay), 215 B.R. 780, 788 (10th Cir. BAP 1997); Via Christi Reg'l Med. Ctr. v. Budig (In re Budig), 240 B.R. 397, 399 (D. Kan. 1999).
[6] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (internal quotation marks omitted).
[7] The bankruptcy court noted that Creditors did not establish at trial that there was, in fact, a debt owed to Creditors by Debtor, or how much that debt might be. However, because the Creditors clearly intended to make a claim against Debtor for damages arising out of the venture, the bankruptcy court stated that it would make a determination as to whether any potential debt is dischargeable based upon the actions complained of by Creditors. Although not a part of the appellate record, a review of the Debtor's creditor matrix shows that all of the Creditors filed proofs of claim in Debtor's case.
[8] The appellate record does not include a trial transcript. The Creditors attached an exhibit to their complaint that appears to be one page of an Internet advertisement for one of the Debtor's business entities called Hampton Consulting Corp. See Appellants' App. at 48. The advertisement indicates Hampton Consulting offers investing services, but Creditors provided no evidence that Creditors relied on the advertisement or what investment services, if any, the Debtor or his businesses provided to them. There is also no indication that this exhibit was admitted at trial.
[9] Br. of Appellants at 7-8 (quoting Hawkinson v. Bennett, 962 P.2d 445 (Kan. 1998) and Cornett v. Roth, 666 P.2d 1182 (Kan. 1983) (emphasis omitted)).
[10] Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371-72 (10th Cir. 1996).
[11] Id. at 1372 (citations omitted).
[12] Id.
[13] Holaday v. Seay (In re Seay), 215 B.R. 780, 788 (10th Cir. BAP 1997) (reviewing Oklahoma law); see also Cundy v. Woods (In re Woods), 284 B.R. 282, 288 (D. Colo. 2001) ("[T]he generic duties of trust and confidence owed by partners or joint venturers do not create a § 523(a)(4) fiduciary relationship.").
[14] E.g., Shapiro v. Mones (In re Mones), 169 B.R. 246, 255-56 (Bankr. D. D.C. 1994) (finding debtor licensed under federal Investment Adviser Act of 1940 to be fiduciary based on statutory trust created under Act). The Creditors in this case have not established that the Debtor was licensed under state or federal law as an investment advisor.
[15] E.g., Wachtel ex rel. Wolfert v. Rich (In re Rich), 353 B.R. 796, 806 (Bankr. S.D.N.Y. 2006) (finding debtor to be fiduciary where he acted as investment consultant and accountant for creditor for several years and had control over creditor's money, which he clearly accepted in fiduciary capacity).
[16] E.g., Marks v. Hentges (In re Hentges), 373 B.R. 709, 722-23 (Bankr. N.D. Okla. 2007) (debtor acting as investment advisor was not fiduciary because he did not acquire any money in trust, but rather only induced creditor to invest in securities in companies debtor managed); Windsor v. Librandi (In re Librandi), 183 B.R. 379, 384 (D. M.D. Pa. 1995) (debtor who merely provided investment advice but was not entrusted with funds over which he could exercise discretionary control was not fiduciary); Graffice v. Grim (In re Grim), 293 B.R. 156, 166-67 (Bankr. N.D. Ohio 2003) (finding debtor was not fiduciary because he had no dominion and control over creditors' funds).
[17] Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004).
[18] Id. (internal quotation marks omitted).
[19] Id.
[20] Id.
[21] E.g., Berman v. Hollinger (In re Berman), 248 B.R. 441, 445-46 (Bankr. M.D. Fla. 2000) (debt arising out of a Ponzi scheme operated by a Chapter 7 debtor nondischargeable as intentional theft of investor funds); Brewer v. Jones (In re Jones), 369 B.R. 340, 346-47 (Bankr. N.D. Ohio 2007) (conversion of client funds by debtor financial planner for personal use nondischargeable); Zygulski v. Daugherty, 236 B.R. 646, 652-53 (D. N.D. Ind. 1999) (finding nondischargeability under § 523(a)(6) where debtor dissipated sale proceeds from assets debtor knew were purchased with monies from wife's illegal pyramid scheme).
[22] Cadle Co. v. Stewart (In re Stewart), 263 B.R. 608, 618 (10th Cir. BAP 2001), aff'd, 35 F. App'x 811 (10th Cir. 2002).
[23] Id.
[24] Memorandum Order and Opinion at 24, in App. Appx. at 99.
[25] Br. of Appellants at 3.
[26] Id.
[27] E.g., Carbaugh v. Carbaugh (In re Carbaugh), 278 B.R. 512, 525 (10th Cir. BAP 2002) (listing factors relevant to the determination of whether to modify the stay to permit litigation to continue in another forum).
[28] Memorandum Order and Opinion at 24, in App. Appx. at 99.